## Sunday Broadcasts

BARCO, Deputy Attorney General, May 8, 1940.—In your recent letter you requested to be advised whether or not permits must be obtained from the Department of Public Instruction for the broadcasting of musical programs on Sunday.

Your inquiry arises by reason of the passage of the Act of June 2, 1933, P. L. 1423, 4 PS §121, et seq., which requires that permits and authorization be obtained from

the Department of Public Instruction for Sunday concerts rendered or broadcast after 12 o'clock noon.

Section 1 of this act reads:

"Be it enacted, &c., That from and after the passage of this act, it shall be lawful for any musician within this Commonwealth to receive compensation for singing or playing on Sunday in connection with the rendering of any public concert authorized as hereinafter provided, but the compensation paid to any such musician shall not exceed an amount computed at the rate of compensation received by such musician for similar musical services rendered during week-days."

Section 2, which is also particularly pertinent to our problem, provides as follows:

*"If, and when, authorized by the Department of Public Instruction of this Commonwealth, public concerts may be rendered and broadcast anywhere within this Commonwealth on Sunday after twelve o'clock noon;* and it shall be lawful for the person or persons rendering any such concert to charge an admission fee thereto at a rate which it is estimated will cover the expenses of rendering such concert, including light, heat and compensation to ushers, janitors and musicians: Provided, That the cost of light and heat and compensation to ushers, janitors and musicians shall not exceed an amount computed at the rate charged for light and heat and compensation to ushers, janitors and musicians for week-days: And provided further, That should the amount collected for admission fees to any such concert exceed the actual expenses for light, heat and compensation to ushers, janitors and musicians, the excess shall be paid to the Department of Public Instruction of this Commonwealth to be employed by it for such public music purposes as it may deem proper." (Italics supplied.)

Section 3 reads:

"The Department of Public Instruction may authorize concerts, or series of concerts, to be rendered and broadcast as herein provided; such concerts, or series of con-

certs, to maintain music of a high order, although not necessarily what is known as sacred music. Whenever the said department shall have authorized any such concert, or series of concerts, to be rendered and broadcast, it shall issue a permit, setting forth its authorization thereof, which permit shall also state the date or dates, hour or hours when, and place or places where, such concert, or series of concerts, shall be held. The Department of Public Instruction shall make a charge of five dollars for every permit issued under the provisions of this section."

It is to be noted that the provisions of section 6 of this act are particularly interesting in that to provide any form of entertainment except music, at any concert rendered under the provisions of this act, is unlawful, and upon conviction punishable by fine or imprisonment, or both.

Section 7 makes it a misdemeanor to fail to pay any moneys received from the proceeds of a public concert, within the provisions of this act, in excess of expenses, to the Department of Public Instruction, or to fail to keep an account of the money received and expended.

The Century Dictionary and Cyclopedia defines a "concert" as:

"A public performance of music in which several singers or instrumentalists, or both, participate; especially, one in which the program consists of detached numbers: also applied to the performance of an oratorio, but not of an opera."

It is obvious that this act under consideration deals with "public concerts" produced either by singing or playing of musical instruments which may be "rendered and broadcast anywhere within this Commonwealth on Sunday after twelve o'clock noon". Of course, the music rendered is to be "music of a high order, although not necessarily what is known as sacred music".

The Governor in approving this bill, and thereby making it a law, made the following statement which is most enlightening to the problem:

"This bill does not in any way contribute to the breaking down of Sunday observance. If it did I would not sign it. It permits concerts after noon on Sundays only, if, and when, permits therefor have been issued by the Department of Public Instruction, which must approve the programs in advance.

"The Department of Public Instruction is not required to grant a license for a Sunday concert in any community which is opposed to Sunday music. Therefore, the department in administering the act can give full weight to local opinion.

"The inclusion of anything except music in a program is made a criminal offense punishable by fine or imprisonment, or both.

"This bill does not tend to commercialize the Sabbath because nobody can make a profit out of it. It specifically provides that any receipts beyond bare expenses shall be paid into the Department of Public Instruction to be used by it for a public purpose.

"Thirty-four ministers of various denominations have urged me to approve the bill, while only two have asked that it be vetoed."

It, therefore, appears that what this act seeks to control is not any and all musical programs broadcast over a radio on Sunday, but only a "public concert" rendered and broadcast, for which concert an admission fee may be charged to cover expenses, but not for the purpose of making a profit.

It is well known that one who performs in this Commonwealth worldly employment or business whatsoever on the Lord's Day, commonly called Sunday, is violating the law prohibiting the same unless there is legislative exemption. Obviously the act we are construing was adopted to remove the general prohibition theretofore in effect in this Commonwealth, which made it illegal for musicians or singers to be employed or paid for aiding to render a public concert which might be broadcast, where fees were charged.

It is our thought that this act has application only to "A public performance of music in which several [or more] singers or instrumentalists, or both, participate", which performance may be broadcast. These participating musicians or singers are compensated for their services and a fee may be charged for admission to cover the expenses of the concert, but not for the purpose of making a profit. The act requires that any profit realized from such a concert, from fees charged as admission, must be turned over to the Department of Public Instruction, which is to use it for public purposes.

The act also specifies that the music must be of high order, although not necessarily sacred. Sight must not be lost of the fact that no other form of entertainment may be offered with the music on the same program; and that the Department of Public Instruction has the obligation, as well as the right, to approve the program in advance, and may refuse a permit for a musical concert if the community is opposed to it.

Naturally, if no fee is charged for admission to the concert, there is no necessity to render an accounting to the Department of Public Instruction, and there appears no need for obtaining a permit from the Department of Public Instruction, as the act has for its obvious purpose the allowance of a public musical concert on Sunday after 12 o'clock noon, which will not be commercialized by the sponsor.

It is our opinion, and you are therefore advised, that a permit allowing the rendering of a public concert, and the broadcasting of the same, is necessary only where fees are charged for admission, in which case, in addition to first securing the approval of, and a permit for, the program of the public concert, the sponsor must account for all receipts and expenses, and turn over to the Department of Public Instruction all proceeds, less expenses, which are to be used for public purposes.